**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hamze Sweid,<br>           Petitioner,<br>v.<br>John Cantu, et al.,<br>           Respondents. | No. CV-25-03590-PHX-DWL (CDB)<br>**ORDER** |

On September 30, 2025, Petitioner, through counsel, filed a habeas corpus petition under 28 U.S.C. § 2241 seeking release from immigration detention pursuant to *Zadvydas v. Davis*, 533 U.S. 678 (2001), and a motion for temporary restraining order ("TRO") requesting the same. (Docs. 1, 2.) That same day, the Court notified the parties of its intent to consolidate the request for injunctive relief with the merits of the petition pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure and ordered Respondents to show cause why the petition should not be granted. (Doc. 5.) Respondents have now filed a response and Petitioner has filed a reply. (Docs. 6, 7.) Additionally, the case has now been reassigned to the undersigned judge. (Doc. 8.)

For the reasons that follow, the Court is persuaded by Respondents' argument that Petitioner is not entitled to injunctive relief at this time. With that said, the landscape may change in the coming weeks, once Petitioner's time in custody exceeds six months. Accordingly, the Court declines to consolidate Petitioner's request for injunctive relief with the merits and simply denies the TRO request without prejudice.

I. **Background**

Petitioner is a native and citizen of Lebanon who entered the United States as a child in 1998 after applying for admission as a non-immigrant visitor. (Doc. 6-1 ¶¶ 3-4.) Petitioner later filed unsuccessful applications to adjust his status. (*Id.* ¶¶ 5-8.)

On December 5, 2012, after twice being convicted of marijuana possession in state court, Petitioner was detained by ICE agents. (*Id.* ¶¶ 12-15.) On December 20, 2012, Petitioner was released from immigration custody on his own recognizance. (*Id.* ¶ 19.)

On April 5, 2025, after several other driving and drug possession offenses, ICE again detained Petitioner. (*Id.* ¶¶ 23, 29, 32-33.) On May 20, 2025, an Immigration Judge ("IJ") ordered Petitioner removed from the United States to Mexico, or, in the alternative, to Lebanon. (*Id.* ¶ 35.) Petitioner waived his right to appeal the removal order. (*Id.*)

On May 22, 2025, Petitioner's brother personally delivered Petitioner's Lebanese passport to ICE officials. (Doc. 1 at 7-8.) Petitioner asserts that ICE subsequently "lost the passport and has not secured any alternative travel documents." (Doc. 2 at 1.)

On May 30, 2025, ICE submitted a request for acceptance to the Consulate General of Mexico, which referred it that same date to the Mexican Embassy in Washington, D.C. (Doc. 6-1 ¶ 36.) Respondents provide no further evidence of the status of that request.

On June 12, 2025, Petitioner was briefly transferred out of immigration custody, and into the custody of state officials, so he could be transported to state court to face additional criminal charges. (*Id.* ¶ 37.) On June 19, 2025, after being found guilty of those charges, Petitioner was transferred back into immigration custody. (*Id.* ¶ 38-39.)

On July 19, 2025, ICE submitted a travel document packet to the Lebanese Embassy. (*Id.* ¶ 41.) On July 28, 2025, the Lebanese Embassy returned the packet to ICE and directed ICE to submit it to the Lebanese Consul General in Los Angeles, California. (*Id.* ¶ 42.) That same day, ICE did so. (*Id.*) Respondents provide no further evidence of the status of that request.

…

…

## II. Legal Standard

Under Rule 65 of the Federal Rules of Civil Procedure, a party may seek injunctive relief if it believes it will suffer irreparable harm during the pendency of an action. There are two types of injunctions available under Rule 65: TROs and preliminary injunctions. Both are governed by the same substantive standards. *Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).

More specifically, each type of injunction "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (cleaned up). *See also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right.") (citation omitted); *Dymo Industries, Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964) ("The grant of a preliminary injunction is the exercise of a very far reaching power never to be indulged in except in a case clearly warranting it.").

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter*, 555 U.S. at 20. However, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips sharply in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (cleaned up). Additionally, when, as here, "a government agency is a party," "the final two injunction factors—the balance of equities and the public interest—merge." *Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031 (9th Cir. 2024).

Regardless of which standard applies, the movant "carries the burden of proof on each element of either test." *Env't. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

### III. Analysis

The analysis begins with the first *Winter* factor—whether Petitioner has shown a likelihood of success on the merits. *Roe v. Critchfield*, 137 F.4th 912, 922 (9th Cir. 2025) ("Likelihood of success on the merits is the most important *Winter* factor and is a threshold inquiry.") (cleaned up).

Petitioner's claim for relief arises under *Zadvydas v. Davis*, 533 U.S. 678 (2001). The petitioners in that case, like Petitioner here, were aliens who had been ordered removed from the United States, had not been removed during the 90-day following the issuance of the removal order (which is sometimes known as the "removal period"), and were being held in immigration custody pursuant to 8 U.S.C. § 1231(a)(6) pending the completion of the removal process. The question presented in *Zadvydas* was "whether this post-removal-period statute authorizes the Attorney General to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal." *Id.* at 682. The Court resolved that issue as follows:

> [W]e think it practically necessary to recognize some presumptively reasonable period of detention. . . . While an argument can be made for confining any presumption to 90 days, we doubt that . . . Congress . . . believed that all reasonably foreseeable removals could be accomplished in that time. We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months. Consequently, for the sake of uniform administration in the federal courts, we recognize that period. After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.* at 701.

In its response brief, the government interprets *Zadvydas* as creating a hard-and-fast

rule that an alien being detained pursuant to § 1231(a)(6) cannot bring a constitutional challenge to his detention unless and until more than six months have elapsed since the removal order became final. The government thus argues that Petitioner's challenge is premature given that his removal order became final less than six months ago *i.e.*, on May 20, 2025. (Doc. 6 at 6 ["*Zadvydas* defined six months as a presumptively reasonable period of detention. It is undisputed that Petitioner has been detained less than six months from the date of his final order of removal. Therefore, Petitioner's detention is authorized under 8 U.S.C. § 1231(a)(6)."]; *id.* at 7 ["The length of Petitioner's detention does not violate his due process rights, and his request for supervised release is premature. Based on the foregoing, Petitioner's continued detention is not indefinite and remains both authorized and constitutional."].)

The Court does not share this interpretation of *Zadvydas*. True, some courts appear to have interpreted *Zadvydas* in this fashion.[1] But that interpretation is difficult to reconcile with *Zadvydas*'s clarification that it was simply establishing a presumption that detention not exceeding six months is constitutional. *Zadvydas* did not hold that this presumption is conclusive in all cases and under all sets of facts—a point the Supreme Court emphasized in a subsequent case. *Clark v. Martinez*, 543 U.S. 371, 384 (2005) ("We also reject the Government's argument that, under *Zadvydas*, § 1231(a)(6) authorizes detention until it approaches constitutional limits. The Government provides no citation to support that

---

[1] *See, e.g., Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("[I]n order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."); *Chance v. Napolitano*, 453 F. App'x 535, 536 (5th Cir. 2011) ("Chance had not been in post-removal-order detention longer than the presumptively reasonable six-month period set forth in [*Zadvydas*]. Consequently, the district court did not err in finding that his challenge to his continued post removal detention was premature."); *Singh v. Immigration and Customs Enforcement Field Office Director*, 2025 WL 307635, *2 (W.D. Wash. 2025) ("[T]he six-month presumptively reasonable period for Petitioner's detention will not expire until February 2025. Given that his detention is presumed reasonable until at least that time, Petitioner has failed to raise a constitutional concern regarding his continued detention."); *Luong v. Gonzales*, 2007 WL 3342727, *6 (D. Ariz. 2007) ("Petitioner's post-removal order detention has not yet approached the six-month period deemed presumptively reasonable by the Supreme Court. Petitioner seeks release before the expiration of the presumptive six-month removal period and, therefore, his challenge to his detention under *Zadvydas* is not ripe for review.") (citations omitted).

description of the case—and none exists. *Zadvydas* did not hold that the statute authorizes detention until it approaches constitutional limits; it held that, *since* interpreting the statute to authorize indefinite detention (one plausible reading) would approach constitutional limits, the statute should be read (in line with the other plausible reading) to authorize detention only for a period consistent with the purpose of effectuating removal. If we were, as the Government seems to believe, free to 'interpret' statutes as becoming inoperative when they 'approach constitutional limits,' we would be able to spare ourselves the necessity of ever finding a statute unconstitutional as applied.") (cleaned up). As a result, some courts have concluded that an alien being detained pursuant to § 1231(a)(6) may bring a constitutional challenge to his confinement even if the period of confinement has not yet reached the six-month mark. *See, e.g., Zavvar v. Scott*, 2025 WL 2592543, *6 (D. Md. 2025) ("[T]he fact that Zavvar has not yet been detained for six months does not preclude his argument that his detention is unlawful, both because the six-month presumption does not necessarily control in cases in which the petitioner was not subject to continuous detention from the issuance of the removal order, and because the six-month presumption is rebuttable."); *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 396 (D.N.J. 2025) ("Although some courts have *read Zadvydas* as creating a bright-line rule—one that effectively allows the government to detain a person for at least six months without judicial review, even if there was no possibility of removal—a close reading of *Zadvydas* does not support that interpretation."); *Trinh v. Homan*, 466 F. Supp. 3d 1077, 1093 (C.D Cal. 2020) ("*Zadvydas* established a 'guide' for approaching detention challenges, not a categorical prohibition on claims challenging detention less than six months."); *Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wisc. 2008) ("Nothing about this scheme supports the conclusion drawn by many courts that the presumptive legality of detention within the first six months is irrebuttable. The *Zadvydas* Court did not say that the presumption is irrebuttable, and there is nothing inherent in the operation of the presumption itself that requires it to be irrebuttable."). The Court agrees with those decisions.[2]

---

[2]   The Court acknowledges that several Ninth Circuit cases contain passages that can be construed as suggesting that a *Zadvydas* claim may only be brought after the six-month

Yet even though Petitioner is not foreclosed from bringing a *Zadvydas* claim under these circumstances, the fact his detention has not yet exceeded the six-month mark means he faces a much weightier burden. "Within the six-month window, the *detainee* must prove the unreasonableness of detention, and courts must accord great deference to Executive Branch determinations based on foreign policy expertise and administrative necessity. After the expiration of six months, the detainee need only offer a valid reason why removal is unforeseeable, which the *government* must then *disprove*. And as time passes, the burden on the government increases accordingly." *Cesar*, 542 F. Supp. 2d at 903. On this record, Petitioner has not met his burden.

First, the factual premise underlying Petitioner's TRO request is that his removal to Lebanon is unlikely to occur in the foreseeable future because ICE lost his Lebanese passport after his brother delivered the passport to an ICE agent. (Doc. 2 at 1 ["Although his family delivered his Lebanese passport to ICE on May 22, 2025, ICE lost the passport and has not secured any alternative travel documents. Because ICE has failed to effect removal and no significant likelihood of removal exists in the reasonably foreseeable future, continued detention is unlawful under *Zadvydas* . . . ."].) However, this factual premise is not sufficiently established. The declaration from Petitioner's brother does not say anything about what happened to the passport after he delivered it to the ICE agent on May 22, 2025. (Doc. 1 at 7-8.) Thus, the only references to the passport being "lost" appear in the unverified petition and in the motion for a TRO. (Doc. 1 at 3 ["ICE has admitted that Petitioner's passport is missing"]; Doc. 2 at 3 ["ICE lost Petitioner's

---

mark. *Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008) ("*Zadvydas* . . . held that after a presumptively reasonable six-month period of post-removal period detention, the alien was entitled to release if he successfully demonstrated that there was good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future.") (citation omitted); *Arango Marquez v. I.N.S.*, 346 F.3d 892, 898-99 (9th Cir. 2003) ("Section 1231(a)(6) does not authorize indefinite post-removal period detention, but instead imposes an implied six-month limit on such detention, provided that removal is not reasonably foreseeable."); *Xi v. U.S. I.N.S.*, 298 F.3d 832, 840 (9th Cir. 2002) ("Having spent considerably more than six months in detention, Lin is entitled to make a showing in federal court that his removal to China is not reasonably foreseeable"). However, the Court does not view those passages as constituting binding circuit law on this issue because they did not "resolve[] it after reasoned consideration." *United States v. McAdory*, 935 F.3d 838, 843 (9th Cir. 2019).

passport—the very document necessary for travel to Lebanon."].) The difficulty with this approach is that "arguments and statements of counsel are not evidence." *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.*, 289 F.3d 589, 593 n.4 (9th Cir. 2002) (cleaned up). The government emphasizes this point in its response. (Doc. 6 at 7 ["Petitioner provides no support for his allegation that ICE lost his passport or that his passport is 'missing.'"].) The government also disputes, albeit without providing any supporting evidence of its own, that the passport is lost. (*Id.* at 1-2 ["ICE did not lose the Petitioner's passport. Rather, efforts are actively underway to secure travel documents from the Consulate General of Lebanon and effectuate Petitioner's removal."].) And although Petitioner, in his reply, faults the government for not providing a declaration from the ICE agent who received the passport from his brother or otherwise providing evidence to substantive its assertions (Doc. 7 at 2-4), this amounts to improper burden-shifting, particularly in a case (such as this one) involving a request for a TRO premised on a *Zadvydas* challenge brought before the expiration of the presumptively reasonable six-month period.

Second, and at any rate, Petitioner has not sufficiently explained why the alleged loss of his Lebanese passport undermines the likelihood of his removal in the reasonably foreseeable future. There is no evidence, for example, that the Mexican Embassy in Washington, D.C. or the Lebanese Consul General in Los Angeles, California has rejected the government's request for removal-related assistance due to the absence of a Lebanese passport. The limited record merely establishes that the government made a timely request for assistance to each country, that the government is currently awaiting a response from each country, and that the resulting period of delay has not caused Petitioner to remain in immigration detention beyond the presumptively reasonable six-month period. Particularly given the "great deference" that courts must provide "to Executive Branch determinations based on foreign policy expertise and administrative necessity," *Cesar*, 542 F. Supp. 2d at 903, the Court cannot say that Petitioner has established a likelihood of success on the merits on his *Zadvydas* claim or even serious questions going to the merits

of that claim at this time.

Given this determination, it is unnecessary to address the remaining *Winter* factors. *Critchfield*, 137 F.4th at 922 ("In the absence of serious questions going to the merits, the court need not consider the other factors.") (cleaned up).

Accordingly,

**IT IS ORDERED** that Petitioner's motion for TRO (Doc. 2) is **denied**. This determination is, however, without prejudice to Petitioner's ability to renew his request for relief once his detention exceeds the six-month mark.

Additionally, because the Court declines here to consolidate resolution of the TRO with the Petition, **IT IS FURTHER ORDERED** that Respondents must answer the Petition within **20 days** of the date of this Order. Petitioner may file a reply within **10 days** of the date of the answer. The parties are encouraged to present any additional evidence not yet developed or presented as part of their briefing on the merits of the Petition.

Dated this 30th day of October, 2025.

Dominic W. Lanza
United States District Judge